[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After hearing testimony, reviewing the file, and considering the evidence the court finds the following facts to have been proven:
The plaintiff and the defendant were intermarried in New York CT Page 12211 City on June 3, 1972. The plaintiff and the defendant both have resided in the State of Connecticut for more than one year next before the date of the complaint. The parties have two children issue of this marriage, both of whom are adults and no minor children have been born to the defendant since the date of this marriage. Neither party has received any governmental assistance during this marriage. The evidence discloses that the marriage of the parties has broken down irretrievably.
The plaintiff husband is 53 years of age and is in good health. This is the plaintiff's second marriage. He had no children issue of his first marriage. He has been self employed as a prosthedontist with a practice in Greenwich, Connecticut since 1974. He was born and raised in New York City and received a bachelor's degree in philosophy from Syracuse University. He graduated in 1969 from the NYU College of Dentistry. He interned at Brookdale Hospital for a year and performed post graduate work at NYU in prosthetics. Prosthetics involves the designing and placement of dentures, bridges and crowns. He is also trained as an implant surgeon, including postoperative cancer care. He considers himself a specialist in prosthetics and has a strong interest as a ceramist, which is the business of building porcelain crowns with proper coloration. The plaintiff operates his sole proprietorship dental practice in a building that he owns in downtown Greenwich. At the time of the marriage in 1972, he was in his second year of post graduate work at NYU. He had $15,000 cash and modest earnings. He owned a car and had no debts
The defendant wife is 52 and is in good health. She was unemployed for most of the marriage, and was a homemaker raising their two sons. She graduated from NYU with a degree in educational history and political science. She received a master's from NYU in early childhood education. She had no children, issue of her first marriage. This is her second marriage. Her first husband was killed in an automobile accident in 1969. The parties met in 1970. She was then employed as a teacher.
At the time of this marriage she had no debts and had assets of $350,000 primarily from life insurance on her first husband. She was teaching in the Head Start Program in the Westchester County school system. She owned a Jaguar XKE automobile. Their substantial assets were acquired during this marriage, primarily from the plaintiff's effort as a dentist. In addition, the defendant had $350,000 from her first husband's insurance policy CT Page 12212 and the plaintiff received $420,000 by way of inheritances.
The parties moved to Connecticut in 1973 to a rented house. The plaintiff commuted to New York City and the defendant drove to her Westchester County teaching job. In 1975, they bought a house in Purchase, New York for $125,000. The source of the funds was the defendant's cash of $60,000, a mortgage of $60,000 and a gift of $5,000 from the plaintiff's father. The plaintiff opened a private dental practice at 138 Milbank Avenue, Greenwich CT, a building he purchased in 1974 for $83,500. Prior to that he was sharing space with another dentist, three days a week in Greenwich and continued to commute to New York City. Of the $83,500 Milbank Avenue purchase price, the defendant paid $15,000 cash, the plaintiff's father $5,000 and a mortgage was taken from the bank for the balance. In addition there were substantial expenses to fix up the building to convert it from a two family house to a dental office. Ten thousand dollars the plaintiff inherited from his aunt and part of the $350,000 he inherited from his father went into the dental building. It is not clear from the testimony whether the plaintiff contributed any of his own savings. The construction was completed in February 1997. The plaintiff was the general contractor for these renovations.
The parties remained in their single family house in Purchase until the mid-1980's. They bought vacant land on Round Hill Road, Greenwich in 1985 for $315,000 on which they constructed the current marital house. The plaintiff designed the home, was the general contractor and spent many hours performing manual labor. The 5,000 square feet house has six bedrooms and is situated on four acres. The house is worth $2,800,000 subject to a mortgage of slightly less than $80,000. The plaintiff contributed $100,000 cash to the house. A construction/bridge loan paid the rest of the land purchase and construction cost. The plaintiff's assets were pledged as additional security for these loans. The pledge was never called. After the completion of the Round Hill Road house in 1987, substantial improvements were made such as gardens, built-in pool, leveling off the rear field, wainscotting, and construction of a terrace. These improvements were paid from the plaintiff's earnings. The defendant put no money into purchasing the land, building the house or improving the house. As far as the labor expended in construction of the house, the plaintiff testified that "I worked there every night, every lunch, every weekend. I sweated."
The house was completed and the parties moved in February CT Page 12213 1987. They then sold the Purchase, New York house for $400,000, netting somewhere in the area of $300,000-$350,000. The plaintiff wanted to have a small mortgage on the Round Hill Road property in the $100,000 range. It was rounded off to $200,000 and has now been paid down to less than $80,000. The property at 138 Milbank Avenue is mortgage free.
Except for the contribution of $60,000 to the Purchase, New York house, and the $15,000 for the Milbank Avenue purchase, the defendant kept her own funds for her own personal use. The plaintiff gave her weekly cash and paid all the other expenses for the management of the family. He paid income taxes on the interest that she earned on her money.
There was substantial testimony at trial concerning the causes of the breakdown of the marriage. After considering the testimony of both parties, and reviewing various items of evidence, the court concludes that the plaintiff is solely at fault for the breakdown of the marriage. The commencement of the law suit was devastating for the defendant. She has been emotionally and physically affected by the causes for the breakdown of the marriage.
The defendant never resumed teaching after 1974. From 1988 through 1992 she ran an antiques business at a loss. She did some part time teaching. Their oldest son graduated from Washington University in St. Louis, Missouri in 1997. He is self supporting in a financial job in New York City. The youngest son is a senior at Emory University and will graduate in May, 1999.
The parties have substantial assets. The plaintiff has a substantial earning capacity. At the defendant's age she has minimal earning capacity. Both parties have agreed that permanent alimony should be awarded.
The plaintiff's business is successful and he testified as to the value of his business, a sole proprietorship. The plaintiff's earnings in 1997, the year in which this action was commenced, were his highest. The court is mindful that in most matters that appear on the family side of the Superior Court, earnings are claimed to have decreased during the pendency of the action. The court believes that the records kept by the plaintiff are accurate and reflect his earnings. The court believes that a fair and reasonable method of determining his gross and net earnings would be to average his earnings for the years 1994-1997 and the CT Page 12214 first half of 1998. The plaintiff testified that his earnings in the first six months of 1998 were approximately $100,000 less than the first half of 1997. Using that method the court concludes that the earning capacity of the plaintiff is $336,000 per year gross. This sum assumes that no personal expenses have been paid by the business and no deductions for the plaintiff's social security, state, federal and medicare taxes have been made. It assumes all other business and professional expenses have been paid.
There was substantial testimony concerning the Rockrimmon Country Club in Stamford, Connecticut. The family has belonged to the Club for 15 years. The defendant testified that the club is her entire social life. Since she is unemployed, she uses the Club for all purposes. She claims it is essential to her continued mental and physical well being. On the other hand, he claims he needs the club for his personal relaxation and business generation. The plaintiff testified that substantial dental business is generated from members of the Rockrimmon Club. Exhibit 10 shows $182,680 of dental fees paid by Rockrimmon members to the plaintiff from January, 1996 through June, 1997. The plaintiff claims it is essential that he be the member of the Club.
The Chairman of the Bylaws Committee of the Rockrimmon Club testified indicating that upon a dissolution of a marriage, only one, not both parties can continue membership in the Club. The other party can become an individual member upon completion of a new member application. The initiation fee for a new member is $65,000 and is non-refundable. It is not a bond. In addition there are dues of $11,000 a year. The Rockimmon Club also has $350 monthly minimum restaurant charge, a minimum purchase requirement from the Pro shop, as well as usage fees for bags, storage, caddy, carts, etc. There are no greens fees. It is therefore up to this court to balance the interests and to determine which of the two parties should become the one full member of the Club.
The final controversy of the parties had to do with the valuation of his dental practice. The defendant's expert testified that the fair market value of the business after taking various deductions is $350,000. The plaintiff stated in his financial affidavit that the value of the business is between $275,000 and $300,000. The business is an asset. Krafick v.Krafick, 285 Conn. 800 (1992). It is this court's opinion that CT Page 12215 the business has a limited potential for sale. The principal value of the business to the parties is the production of a continuing income stream. The court feels that it would inequitable, under the circumstances of this case, to add the value of the business to the plaintiff's side of the asset ledger sheet and to compensate the defendant for an equivalent amount of money in this long term marriage. In fact, the defendant will be paid periodic alimony out of that same business asset. Eslami v.Eslami, 218 Conn. 801, 817 (1991); Puris v. Puris,30 Conn. App. 443, 447 (1993); Turgeon v. Turgeon, 190 Conn. 269, 272-77
(1983).
In support of this position is the following quotation from a 1992 Superior Court case regarding the valuation of a dental laboratory. "Each party had an accountant testify as to the value of the defendant's business. The plaintiff's accountant gave a value of $250,000, the defendant's accountant gave a value of between $0 and $37,000. The court finds that the defendant in this case is in a personal services business. This business will provide the stream of income with which the defendant will pay the award of periodic alimony. To take into account the business in both the property division and the award of alimony would in effect be double dipping." Cardillo v. Cardillo, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket NO. FA91 0114248 S (June 2, 1992, Coppeto, J.), 1992 Conn. Super. Lexis, 1753, 1992 CT Sup. 5791.
The court has considered the provisions of General Statutes §§ 46b-62, 46b-81 and 45b-82 and O'Neill v. O'Neill,13 Conn. App. 300 (1988) as well as the evidence, testimony, claims of law and claims of fact made by the parties in rendering the following orders:
1 . A decree dissolving the marriage will enter on the grounds of irretrievable breakdown.
2. The plaintiff is to vacate the marital home at 326 Round Hill Road, Greenwich, Connecticut within 21 days from the date of this memorandum of decision. In accordance with Practice Book § 4047, (now Practice Book § 21-43) the defendant filed a motion during trial and made a request in her claims for relief that an order to vacate the marital home enter on the last day of trial and in effect requested that any stay of execution, if any, that may apply to such an order, be terminated in the nature ofYontef v. Yontef orders. The court, therefore, orders that any CT Page 12216 stay, which may be in effect concerning the above order to vacate the marital home, will be terminated immediately.
3. The marital home at 326 Round Hill Road, Greenwich, Connecticut will be placed on the market and sold immediately. The court will retain continuing jurisdiction over the terms and conditions of the sale of the premises, including but not limited to, real estate broker listing, times of showing, sale price, etc. Upon the closing, after the payment of normal closing costs, attorney's fees, recording fees, conveyance taxes, real estate brokerage commission, if any, and the principal and unpaid interest on the first mortgage as well as the real estate taxes and other expenses, the proceeds shall be divided equally between the parties.
4. Each party will be responsible for paying one-half of any capital gains tax that may accrue by reason of said marital home division, each party being permitted the benefits of the current tax law.
5. All right, title and interest in and to the real property at 138 Milbank Avenue, Greenwich, Connecticut is awarded to the plaintiff, free and clear of any claims of the defendant.
6. All right, title and interest in and to the dental practice including but not limited to equipment, accounts receivables and bank accounts is awarded to the plaintiff, free and clear of any claims by the defendant.
7. The defendant's 10% interest in the dental laboratory is hereby ordered to be conveyed by the defendant to the parties' two children who own the remaining 90%. In the event that the defendant does not make such conveyance, this court orders that the defendant convey to the plaintiff all right, title and interest that she owns in said laboratory including all right to receive accrued income and/or tax deductions. The court enters no further orders concerning the occupancy and/or status of said dental laboratory.
8. The plaintiff is to pay to the defendant as periodic alimony the sum of $120,000 per year payable $10,000 on the first of each month commencing November 1, 1998 until the defendant's death, the plaintiff's death, plaintiff's remarriage, whichever event sooner occurs. The defendant will pay for the marital home expenses commencing November 1, 1998, excluding the mortgage CT Page 12217 principal and interest.
9. The court will retain continuing jurisdiction concerning the startup adjustments of said periodic alimony payments because the pendente lite orders terminate effective upon the entry of this decree.
10. As additional expense and not as nor included in periodic alimony, the plaintiff shall pay for and hold the wife harmless from any and all claims and payments, including principal and interest for the first mortgage at the property at 326 Round Hill Road until said mortgage is paid in full.
11. The defendant is to provide to the plaintiff no later than April 15th of each year a statement of annual income and expenses for the prior calendar year concerning the defendant's dental practice. The statement will be prepared by a CPA at the plaintiff's cost. In addition, the plaintiff may request in writing that the defendant produce verification of the information contained or to be contained in said statement. Any further verification, production and/or audit of said statement will be subject to an order of the Superior Court.
12. The defendant shall own the following property as her own sole property, free and clear of any claim by the plaintiff:
a. Putnam Trust checking account, $4,000
b. Putnam Trust savings account, $2,000
c. First Union Certificate of Deposit, $36,363.
d. First Union checking account, $1,358
e. Putnam Trust checking account, $70
f. One-half of the Putnam Trust mortgage savings account, $1,114
g. U.S. Savings Bonds, $15,000
h. Bears Stearns account, $283,778
i. Bonds in the plaintiff's name, $65,000
j. Josepthal consisting of two accounts, $25,679 CT Page 12218
k. Dryfus account, $5
l. Interest in her father's estate, $100,000
m. One-half Para Partners, LPTL, $408,460
n. 1990 Range Rover automobile, $10,000
o. Bears Stearns IRA in defendant's name, $28,118
13 . The plaintiff shall own the following property as his sole property, free and clear of any claim by the defendant.
a. One-half Putnam Trust mortgage savings account, $1,114
b. 25% interest in Greenwich Investments, $68,289
c. Charles Schwabb Brokerage account, $1,393
d. Merrill Lynch account, $16,000 (if any)
e. Bears Stearns IRA, $28,118
f. One-half Para Partners, LPTL, $408,460
g. Robertson Stephens Co., $99,200 (if any)
h. Bears Stearns Keogh, $226
i. Bears Stearns IRA in plaintiff's name, $2,890
j. Gaines Berland Inc. IRA, $6
k. 1994 Jeep Grand Cherokee automobile, $17,000
l. 1991 Ford Explorer automobile, $10,000
m. 1982 Mercedes automobile, $3,000
n. Note receivable from Todd Leon, $50,000
o. Note receivable from Jared Leon, $50,000
14. In the event a Qualified Domestic Relations Order (QDRO) CT Page 12219 is necessary to put into full force and effect the terms and conditions of the above two paragraphs, the court will retain continuing jurisdiction concerning the terms and conditions of said QDRO.
15. Each party will hold the other harmless from any and all debts, claims and liabilities listed in his and her respective financial affidavits.
16. The plaintiff will pay for and hold the defendant harmless from any and all claims, penalties, liabilities and assessments due by reason of any joint federal and state income tax return filed by the parties. Each party shall cooperate in any audits and proceedings necessary concerning those tax returns and shall produce all documents, signatures and information that is necessary to put into effect this court order. Any refunds shall become the plaintiff's property.
17. Each party will pay for his or her own attorney's fees and costs of experts.
18. Each party will sign any documents that are necessary to put into full force and effect the orders of this court.
19. Each party will also produce whatever documents that are necessary to to put into full force and effect the orders of this court, including, but not limited to those necessary to obtain the tax basis of any of the assets set forth in this order, including the marital home at 326 Round Hill Road, Greenwich, Connecticut.
20. Effective January 1, 1999 the defendant is awarded all right, title and interest in and to the membership in the Rockrimmon Country Club, as well as any bond and monies due from the Rockrimmon Country Club. The defendant shall cooperate and sign all necessary documents to permit the plaintiff to join the Rockrimmon Country Club as a full golf member. In the event that the plaintiff is accepted as a full golf member of the Rockrimmon County Club, the defendant shall pay one-half of the initiation fees to the Rockrimmon Club, if any, that are due by the plaintiff to the Rockrimmon Country Club. Expenses, assessments, dues, paid or unpaid, that accrue after January 1, 1999 for the continued membership of the defendant in the Rockrimmon Country Club shall be paid by the defendant. To the extent permitted by the Bylaws of the Rockrimmon Country Club, both parties will CT Page 12220 retain the family membership until December 31, 1998. Both parties shall then notify the Rockrimmon Country Club in writing of the orders of this court and that the defendant is the continuing member. Until December 31, 1998 the plaintiff shall pay all dues prorated to December 31, 1998 from the date of this decision. Each party shall pay their own expenses and fees, incurred at the Rockrimmon Country club from the date of this decision.
21. The plaintiff will pay to the defendant the sum of $2,000 to reimburse her for the real estate appraisal fees paid for in the defense of this case.
22. The court finds that the defendant has no ownership interest in Greenwich Investments and was the agent of the plaintiff concerning the acquisition of Greenwich Investments. See Article XVI of Exhibit #13, November 26, 1993. The defendant shall sign any and all documents to convey to the plaintiff any right, title and interest in which she may claim in Greenwich Investments.
23. The defendant shall return to the plaintiff immediately upon the date of this decision, the following items of personal property.
 1. 41 ounces of gold 2. Diamond watch 3. Wedding band
These items were alleged to have been removed by the defendant from the joint safe deposit box. If said items are not fully and completely returned in accordance with this court order, this court will retain continuing jurisdiction to hear further evidence concerning the fair market value of said items. The court will then make a determination concerning the fair market value of said items and order that the defendant pay to the plaintiff said fair market value of said items not returned in accordance with this order.
24. The plaintiff will name the defendant as irrevocable primary beneficiary of $300,000 of life insurance coverage currently on his life for so long as he is obligated to pay periodic alimony. The plaintiff will pay all premiums therefore. He shall not pledge, hypothecate or borrow against said policy. In the event that the defendant requests in writing, the CT Page 12221 plaintiff shall produce written confirmation of compliance with this order, no more than twice per calendar year.
25. The plaintiff has been ordered to pay the sum of $1,050 as attorney's fees to the defendant's attorney as a pendente lite order. This order is to survive the entry of the decree and said sum is to be paid immediately.
26. Plaintiff shall cooperate with defendant's efforts to maximize her health insurance coverage under COBRA/OBRA. The defendant shall pay all premiums therefore.
27. The court will retain continuing jurisdiction concerning the division of all personal property located in the marital home. The division of said personal property is referred for mediation. No other court orders will enter at this time.
28. The plaintiff's attorney will prepare the judgment file for submission, approval and signature by the defendant's attorney.
BY THE COURT.
KEVIN TIERNEY, JUDGE